# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

HEATHER S. CORNSILK, )
)
      Plaintiff, )
)
v. ) Case No. CIV-14-02-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
      Defendant. )

## OPINION AND ORDER

The claimant Heather S. Cornsilk requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born March 24, 1970, and was forty-two years old at the time of the administrative hearing (Tr. 45, 192). She completed ninth grade and received her certified nurse's assistant ("CNA") license, but has no past relevant work (Tr. 193-194, 65). She alleges that she has been disabled since June 15, 2009, due to degenerative arthritis in lower back, heart, and fractures (Tr. 193).

### Procedural History

On July 16, 2010, the claimant filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Lantz McClain held an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 17, 2012. (Tr. 22-33). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), *i. e.*, she could occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk for at least two hours

out of an eight-hour workday (with normal breaks), and sit at least six hours out of an eight-hour workday (with normal breaks). The ALJ concluded that the claimant was not disabled as directed by Medical-Vocational Guidelines Rule 201.24, *i. e.,* "the Grids" (Tr. 32).

## Review

The claimant contends that the ALJ erred by: (i) failing to consider all of the evidence in making his severity and RFC findings, (ii) failing to properly perform a credibility analysis, and (iii) using the Grids to find her not disabled. The Court agrees that the ALJ did not properly perform a credibility analysis and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of history of numerous fractures including bilateral wrists, ribs, right ankle, skull and status post right knee surgery and the non-severe impairment of Hepatitis C (Tr. 24). The relevant medical evidence reveals that the claimant has a long history of injuries to her right hand, right elbow, and left wrist which were treated at the Emergency Room of United Regional Healthcare System in Wichita Falls, TX. She fractured a finger on her right hand in July, 2003 (Tr. 289-290); her left wrist in November, 2003, which required surgery (Tr. 306, 309, 322-323); her right elbow in June, 2004, which required surgery for the placement and subsequent removal of hardware (Tr. 332-336, 340-341, 350-351, 421, 437-438); a finger on her right hand in December, 2007 (Tr. 540); her right wrist in June, 2008 (Tr. 563); and a finger on her right hand in September, 2008 (Tr. 608).

As to the claimant's right hand, the record contains a number of x-rays that correlate with her injuries set forth above. The x-rays generally revealed normal findings apart from the hand injury the claimant was seeking treatment for and any prior healed injuries (Tr. 290, 540, 563). However, an x-ray on September 29, 2008 revealed degenerative changes of the distal interphalangeal joint of the third through fifth fingers, and an x-ray on June 9, 2010 revealed mild osteoarthritis of the first carpometacarpal joint (Tr. 608, 1256).

The record also contains a number of x-rays of the claimant's right elbow that generally show her June 2004 injury and that show surgical placement of the plate and screws successfully treated the injury (Tr. 348, 336, 364, 358). However, the x-rays on October 3 and November 8 in 2006 both showed calcifications in the triceps tendon, as well as the healed fracture, but otherwise normal findings (Tr. 421, 436). Additionally, the x-ray on November 20, 2006 showed soft tissue swelling (possibly bursitis and/or cellulitis), calcifications in the triceps tendon, and mild arthritic changes (Tr. 457).

The claimant also had a number of x-rays to her left wrist which correlate to her injury and subsequent surgery in November 2003. These x-rays showed normal findings apart from the injury, hardware, and cast (Tr. 309, 329). An x-ray performed on December 23, 2007 after an assault revealed marked soft tissue swelling overlying the hand dorsally but no acute bone or joint abnormalities (Tr. 541-542).

On August 5, 2009 the claimant commenced treatment at W.W. Hastings Indian Hospital. She reported chronic pain and requested refills of Hydrocodone, but she was prescribed a trial of Meloxicam instead (Tr. 1240-1244). The claimant returned to the

hospital on April 13, 2010, with complaints of chronic low back pain, palpitations, and high blood pressure. She stated that Meloxicam was not helping her pain and that she was previously prescribed Lortab for pain by an outside provider. She was prescribed Diclofenac (Tr. 1182-1191). X-rays performed of claimant's lumbosacral spine that same day revealed severe facet arthrosis of L4-L5 and L5-S1, severe degenerative disc disease of L4-L5 and L5-S1, diffuse spondylosis, and no compression fracture (Tr. 1258). The records show the claimant continued to seek treatment from W.W. Hasting Indian Hospital through June 2012 for her back and hands (Tr. 1155-1158, 1163-1165, 1168-1171, 1224-1228, 1323-1333, 1405-1407).

On September 16, 2010, Dr. Ronald Schatzman examined the claimant, noting no edema of the hands, knees, or pretibial areas, 5/5 bilateral grip strength, intact gross and fine tactile manipulation, and adequate finger to thumb opposition. Additionally, he noted full range of motion in her cervical spine, thoracic spine, and lumbar-sacral spine with no scoliosis, increased kyphosis, or increased lordosis. He assessed the claimant with lower back pain by history, pain in bilateral hands by history, panic attacks by history, and chest pain by history (Tr. 1288-1294).

At the administrative hearing, the claimant testified she has pain in her wrists, arms, shoulders, lower back, neck, hips, legs, and ankle, and that the pain is constant in her neck and back (Tr. 54). She stated she can sit for fifteen to twenty minutes at a time due to pressure in her lower back, she can stand for twenty to twenty-five minutes and then needs to sit down for five to ten minutes due to pain, and she can walk about fifteen to twenty feet before she needs to rest due to pain (Tr. 56-58). She testified she can use

-6-

her hands for twenty minutes before she starts losing grip due to pain from her palm to her wrist (Tr. 59-60). She also stated her hands cramp (Tr. 60). She testified her average day includes taking medication, watching tv, playing cards (if she feels up to it), and cooking in the microwave or crockpot (Tr. 61-62).

In his written opinion, the ALJ summarized the claimant's testimony, a Third Party Function Report completed by her husband, and much of the medical record. Upon summarizing the claimant's hearing testimony, he stated, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 28-29). He found the claimant was only partially credible and then found her not disabled as directed by the Grids (Tr. 29-32).

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir.

2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4. The ALJ's credibility determination fell below these standards.

First, the ALJ cited to but did not discuss the credibility factors set forth in Social Security Ruling 96-7p and 20 C.F.R. § 404.1529, and further failed to apply those factors to the evidence.[2] He was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but "simply 'recit[ing] the factors'" is insufficient, *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4, and here the ALJ did not even do that.

Second, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility. The ALJ should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC. *See Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was

---

[2] The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p at *3, 1996 WL 374186 (July 2, 1996).

exaggerating the severity of her headaches.  Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.").

Third, some of the specific reasons given by the ALJ for finding the claimant's subjective complaints were not credible are not entirely supported by the record.  For example, the ALJ found that the claimant did not regularly complain of pain during her visits to W.W. Hastings Indian Hospital, but he ignored the fact that there *were* several occasions where her chief complaint was pain in her back or hands (Tr. 1155-1158, 1166-1171, 1162-1163, 1323-1330, 1405-1407, 1492-1494), a few occasions where her chief complaint was another ailment, but pain medication or muscle relaxants were prescribed or refilled (Tr. 1153, 1406, 1215), and she was routinely reported to be actively taking muscle relaxants, narcotic pain medication, and/or non-steroidal anti-inflammatory medication throughout all of her records from W.W. Hastings Indian Hospital (Tr. 1110-1286, 1403-1423, 1424-1482, 1491-1512, 1513-1524).  Further examination of such "perceived" inconsistencies indicates that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not support his conclusions.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh

all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Because the ALJ failed to analyze the claimant's credibility in accordance with *Kepler* and *Hardman*, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly analyze the claimant's credibility, and if such analysis requires any adjustment to the claimant's RFC on remand, the ALJ should re-determine what work she can perform, if any, and whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**